CV17-2530

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x

BARBARA RUMAIN

and

MOSHE SCHNEIDERMAN,

Plaintiffs

--against—

The AMERICAN CHEMICAL SOCIETY,

Defendant

----------------------------------------------------x

 ORIGINAL

COMPLAINT for Disability Discrimination

Case No. _____

**PLAINTIFFS DEMAND TRIAL BY JURY IN THIS ACTION**


RECEIVED APR 27 2017 PRO SE OFFICE

BIANCO, J.

LINDSAY, M.J.

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ APR 27 2017 ★

BROOKLYN OFFICE

I.  **The Parties to This Complaint**

   A.  **The Plaintiffs:**

   (1)
   | | |
   |---|---|
   | Name | Barbara Rumain (aka Barbara Schneiderman) |
   | Street Address | 791 Hampton Road |
   | City and County | Woodmere, Nassau County |
   | State and Zip Code | New York  11598 |
   | Telephone Number | 917-755-6338 |
   | E-mail Address | barbara.schneiderman@yahoo.com |

   (2)
   | | |
   |---|---|
   | Name | Moshe Schneiderman |
   | Street Address | 791 Hampton Road |
   | City and County | Woodmere, Nassau County |
   | State and Zip Code | New York  11598 |
   | Telephone Number | 917-755-6338 |
   | E-mail Address | moshe.schneiderman@yahoo.com |

   B.  **The Defendant:**

   The American Chemical Society
   1155 Sixteenth Street, NW
   Washington, DC 20036
   USA

   - e-mail: usnco@acs.org
   - Phone: (202) 872-6328, (800) 227-5558 ext. 6328, or 1-800-333-9511

The complaint of the plaintiffs, Barbara Rumain (aka Barbara Schneiderman) and Moshe Schneiderman, respectfully shows and alleges as follows:

**INTRODUCTORY STATEMENT**

   We are bringing a disability discrimination case against the America Chemical Society. The American Chemical Society runs a competition, known as the Chemistry Olympiad, for high school students. Students compete first locally, then at the National Level. Those that do well nationally then go on to a summer study camp. Of these, four are subsequently selected to go on to compete internationally in the International Chemistry Olympiad. This is an exciting educational opportunity and doing well not only increases students' mastery of chemistry but it is also an accomplishment that confers prestige on the participants, opening the doors for admission to Ivy League colleges and professional/graduate schools in the future. Moshe

Schneiderman was not allowed the accommodations that were medically necessary even though the Chemistry Olympiad were sent physician's letters describing the accommodations necessary in order that Moshe not have pain during the lengthy all day National Exam. Consequently Moshe experienced pain both during the National Exam and afterwards. It is difficult to compete fairly when one is in pain. .

   Not only was Moshe not provided with the accommodations he needed, but the coordinator fo the New York division of the Olympiad, Professor Stephen Goldberg was antagonistic and combative with Barbara Schneiderman, Moshe's mom, the morning of the National Chemistry Olympiad. Since his confrontational attack on the mom occurred just moments before the exam stared, it was anxiety producing for Moshe and served to unnerve Moshe right before the start of this important exam. Professor Goldberg's obvious hostility not only embarrassed in front of the scribe but may have led to a less than optimal interaction between Moshe and his scribe since witnessing Professor Goldberg's hostility could only serve to debase Moshe in the scribe's eyes and to impair their interactions. It may also have rattled her and led her to make errors in dictation. There may also have been errors because the scribe was prohibited by Professor Goldberg from speaking to speak to Moshe she could just show him what he said, should he request to see it. Thaw was unnatural and it was unnatural for Professor Goldberg to try and micromanage the interactions between Moshe and the scribe to the point where
By not allowing Moshe the accommodations he needed, the Chemistry Olympiad and the American Chemical Society engaged in disability discrimination.


**JURIDICTION AND VENUE**
Jurisdiction is invoked pursuant to 28 U.S.C. 1332 (federal statue on diversity). Plaintiffs and Defendant are from different states: Plaintiffs live in New York and The American Chemical Society is based in Washington, D.C. and damages exceed the statutory amount of $75,000 needed to confer jurisdiction.. Venue is proper pursuant to 28 U.S.C. 1391 because the events giving rise to the claim occurred in the Eastern District of New York.

This action brought for disability discrimination is pursuant to the Americans with Disabilities Act of 1990 (ADA), the American with Disabilities Act Amendments Act of 2008 (Amendments Act), Section 504 of the Rehabilitation Act of 1973, New York State Human Rights Law, Section 296; The New York City Human Rights Law, Administrative Code of the City of New York, Title 8.

## PARTICULARS OF THE CHARGES OF DISABIILTY DISCRIMNATION

1. According to the website of the American Chemical Society: https://www.acs.org/content/acs/en/education/students/highschool/olympiad/about.html,

   "The U.S. National Chemistry Olympiad is a multi-tiered competition designed to stimulate and promote achievement in high school chemistry. It is sponsored by the American Chemical Society. Each year, four students are chosen to represent the USA in the International Chemistry Olympiad (IChO), which is hosted every year in July in one of the participating countries.

   A description of the Chemistry Olympiad appears in **Exhibit 1**.

2. The first step in the process is to compete in the Local Section Chemistry Olympiad Competition. The Local Section Competition is a competition among students in the greater NY metro area: New York City, Nassau County, Suffolk County, Westchester, Rockland, Hudson and Bergen. Please see **Exhibit 2**.

3. Moshe Schneiderman competed in the Local Chemistry Olympiad competition, which was a one hour test, and his performance was outstanding. Please see **Exhibit 3**. This qualified him to go on to the next step, the National Examination. This next step was a test to occur on April 27, 2014 and it was a lengthy (full day) exam that consisted of three parts.

4. Moshe has flexor carpi ulnaris tendinosis, which gave him pain when he wrote for extended periods of time and therefore he needed a scribe. This was an accommodation he had for all College Board tests. (Please see **Exhibit 4**). As can be seen from the exhibit, when a student has a scribe, he is allotted time and a half (also known as time +50%). The reason for time and a half is that it takes time for the scribe to write down what the student is saying and for the student to check that the scribe has written it down correctly.

5. We asked Professor Stephen Z. Goldberg, the Coordinator for the New York section of the Chemistry Olympiad to provide Moshe with a scribe for the next exam, to be held April 27. He said he would need to consult with the administration of the American Chemical Society in Washington D.C., that deals with the Olympiad.

6. We sent him an email on April 2 containing a letter dated April 1st, from Moshe's physician, Dr. Harris Burstin. The email is contained in **Exhibit 5**.

7. The physician's letter states Moshe needs a scribe. It also states Moshe suffers from iliopsoas tendinopathy of the hips bilaterally and must have breaks as needed from sitting. Please see **Exhibit 5a**.

8. On April 2, 2014 at 11:56 am, Stephen Z. Goldberg wrote us that he had forwarded our letter to the American Chemical Society's National Office and spoke to Mrs. Thatcher who is in overall charge of the exam. He was informed that Moshe must take the exam under the same conditions as the other students despite his disabilities. (Please see email in Exhibit 5b.) He states that he would like to assign Moshe's spot to an alternate.
9. Later that day, in an email dated April 2, at 4:02 pm, Professor Stephen Goldberg says there is a possibility Moshe will have a scribe. Again he says he would like to offer his spot to an alternate. (Please see email in **Exhibit 5c**)
10. On April 3, I email professor Goldberg assuring him Moshe will participate in the chemistry Olympiad and I am working out the details with the Washington office. (**Exhibit 5d**)

11. on Thursday April 12, 2014 , Professor Goldberg sends us an email stating Moshe will be provided with a scribe but will not be given extra time (the time +50%) which is customarily part and parcel of having a scribe. (please see-mail which is **Exhibit 6**). the following two individuals were copied on the email: (1) Cecilia C. Hernandez, Assistant Director Endowed Programs, Education Division, at the American Chemical Society. This includes the Olympiad program; and (2) Margaret Thatcher, an ACS staff member, working for the U.S. National Chemistry Olympiad (USNCO) program.
12. Professor Goldberg confirms in an email that he has read the doctor's letter which states Moshe will need a scribe for all three parts of the exam on April 27. Please see **Exhibit 7**)
13. Barbara Rumain (Schneiderman) called up Ms. Hernandez to discuss Professor Goldberg's April 12th email that Moshe will not be given time and a half as is usual when there is a scribe. In that conversation, Ms. Hernandez told me they once had a blind student who participated in the Chemistry Olympiad. He was given a scribe but not given time and a half (as he rightfully should have been). So in essence I was told they had discriminated before against an individual with a disability and they plan to do it again. However, knowing the blind student did not get time and a half, as he should have, did not make us feel any better. The significance of the event with the blind student is that it indicates that the usual and customary practice of the American Chemical Society was to discriminate against individuals with disabilities.
14. We wrote a letter emailed on April 13, 2014 to Ms. Madeleine Jacobs, Executive Director of the American Chemical Society & Chief Executive Officer. Please see letter in **Exhibit 8**. The letter was to request time and a half, which is usual and customary whenever there is a scribe.
15. The letter made the following points:
    (1) The Charter, Constitution, Bylaws, and Regulations of the American Chemical Society (ACS) GOVERNING DOCUMENTS, Bulletin 5," as revised through January 1, 2014, which can be found at www.acs.org/bulletin, states that will "**Ensure that all ACS-sponsored services and programs promote and advance the full participation of students with disabilities** (my underlining and my bold). The same statement appears in the 2017 version of the Bulletin as well, on p. 47, which is included here as **Exhibit 9**.)
    (2) The Chemistry Olympiad is an ACS-sponsored program and as such should be open to all students including those with disabilities. It should go without saying, of course, that students with disabilities should be allowed not only to participate, but to fairly participate.

(3) The usual accommodation given (both by the College Board and the ACT) when there is a scribe is to give time and a half. Please also note that it says "full participation." How can one participate fully if one is not allowed to participate fairly?
(4) Talking to a scribe takes time. It takes time to say what needs to be written and sometimes several repetitions are necessary before the scribe has the information down correctly. Then one needs to look over what the scribe has written to make certain that s/he did, indeed, get all the information down correctly. All this takes time. That is the reason the College Board and the ACT give time and a half on such exams. Please see **Exhibit 10**, which is the Eligibility Letter from the College Board stating that with a scribe, time +50% time is given.
(5) The rules and regulations of the National Chemistry Olympiad, as stated in the Coordinator's Handbook, are not in keeping with the above Bylaws and Regulations of ACS, the parent organization: By inserting the bolded words "no extra time allotted" in the Handbook, the Chemistry Olympiad is discriminatory against disabled individuals. Please see **Exhibit 11**, which is the relevant page from the handbook.
(6) The issue of my son's inability to get the usual and customary accommodation from ACS is contrary to ACS having a Title 36 Code from Congress. In keeping with ACS being a US Code Title 36 organization, and in keeping with federal policy discouraging discrimination against disabled individuals, ACS should not discriminate. Not giving my son the necessary accommodation which would enable him to participate fully and fairly is also contrary to ACS'S own stated goals/objectives in ACS'S Bylaws and Regulations excerpted above.
(7) We also made the point that since the American Chemical Society was engaging in disability discrimination, which is an illegal activity, it was potentially jeopardizing its multimillion dollar grant from the Hach foundation: The Justice Department could in such a case require the Hach Foundation to claw back the money it had given the American Chemical Society.

16. Following the "claw back" letter, Professor Goldberg said it was decided to give Moshe time and a half usually given when there is a scribe and he emailed us on April 17. Please see **exhibit 12,** The attachment to that email contains Moshe's proposed schedule which give him time and a half and it is reproduced here. (Parentheses and information contained therein are mine.)

|  | Normal Schedule | Schedule for Moshe |
|---|---|---|
| Part 1: 60 Multiple Choice | 10:15-11:45 (90 min) | 9:00-11:15 (135 min= time+½) |
| Lunch | 11:45-12:45 (60 min) | 11:15-12:00 (45 min = *15 min less time than everyone*) |
| Part 2: 8 Problem Solving Questions | 12:45-2:30 (105 min) | 12:00-2:38 (158 min = time+½) |
| Break | 2:30-3:00 (30 min) | 2:38-3:00 (22 min = *8 min less time than everyone*) |
| Part 3: Laboratory | 3:00-4:30 (90 min) | 3:00-5:15 (135 min= time+½) |

17. However, no indication was made that Moshe would get "beaks as needed" for his hip problem, even though the necessity of this was noted in the physician's April 2nd letter. Moreover, ironically the way this schedule creates (time + ½) is by taking away from Lunch time and Break time which all the other students are getting. The Lunch and Break time also allow for walking around which Moshe needs to do. In fact he needs extra breaks above and

beyond what the others are getting; it doesn't help much to take the time away from Lunch time and Break time and put it in the testing time because that just reapportions his breaks and doesn't serve to give him more time total, which is what he actually needs. This schedule allows for time + ½ but it doesn't allow for "breaks as needed," required because of Moshe's hip problem.

18. So not only wasn't there enough time in the schedule as constructed to give Moshe "breaks as needed"; in fact, he was getting less time than the other students are getting during the official Break time and Lunch time because his break time and lunch time were reduced in order to create time +½.

19. We brought this to Professor Goldberg's attention and suggested that Moshe could perhaps take Part 2 after Part 3, which is in accordance with the rules governing the Chemistry Olympiad (see Coordinator's Handbook page 3, paragraph 3).In describing the three parts of the National Exam, it states that the National Examination is a "three-part exam, *you have an option of administering in any order*, and you are free to schedule rest -breaks between parts." (italics are mine) Please see **Exhibit 13**.

19. We received a letter of support in an email from Dr. Tom Barton, President of the American Chemical Society in 2014, supporting us for advocating on behalf of Moshe. He shares with us that he has a special needs son and supports us. (This email was inadvertently deleted but it can be subpoenaed during Discovery.)

20. We wrote to Dr. Mary Kirchhoff, director of ACS's Education Division, to explain that because of his hip problem, our son required "breaks as needed." We explained that this was an accommodation he had with the College Board (please see **Exhibit 14**). We also explained what that concept meant. Please see letter dated April 21, 2014 which was sent as an email to her. It is included here as **Exhibit 15**.

21. Dr. Kirchhoff requested official documentation from the College Board that "breaks as needed" means a student does not have a time penalty when taking a break. We directed her to https://www.collegeboard.org/students-with-disabilities/typical-accommodations/breaks The information from the website is included here as **Exhibit 16** and is also reproduced below:

> Details on Extra and Extended Breaks
> Because the needs of students differ, different types of breaks are available:
> - **Breaks between test sections** meet the needs of most students who are approved for extra breaks. These breaks are a standard length (usually 5 minutes) and are given at scheduled times.
> - **Extended breaks** between sections or subjects are usually twice the standard time.
> - **Breaks as needed** are given to some students with medical conditions. They are granted as requested by the student during the exam. Students notify their proctors by raising their hands, and the timing of the test pauses. When students are ready to continue, they again notify their proctors, and the timing continues.

The explanation from the website cleanly indicates that, with "breaks as needed," students do not have a time penalty when taking a break.

22. On Wednesday, April 23, Moshe and Barbara went down to Adelphi University, where Professor Goldberg teaches, to meet the scribe. We also met Professor Goldberg who was openly hostile; his antagonism was perceptible to everyone including the scribe. This made for a very tense situation in that the scribe who told us she would be asking Professor Goldberg for a letter of recommendation for graduate/professional study sensed his displeasure with us. Since she was relying on a letter from him, she might copy (model) his hostility to us in her interactions with Moshe during the exam. We felt uncomfortable with the atmosphere Professor Goldberg had created and were anxious that it would have negative consequences regarding the scribes' interactions with Moshe during the upcoming exam.
23. That evening, after our meeting, Professor Goldberg sent an email (**Exhibit 17**) reiterating that Moshe needed to start part 3 of the exam at 3:00pm with everyone even if that meant there would be no "breaks as needed." He further went on to say that our requesting the required "breaks as needed," is not substantiated by the doctor's letter (of April 2).
24. On the morning of April 24th, we sent an email to Professor Goldberg explaining to him that "breaks as needed" was a necessary accommodation for Moshe not to have pain. The email is found in **Exhibit 18.** Part of it is given here:

> Your schedule gives my son time and a half, the first accommodation required by law. But, it does not give him "breaks as needed," <u>which are a necessary accommodation for him not to have pain.</u> This is the second disability accommodation he requires in order to test fairly. <u>It, too, is required by law</u>.
>
> The time and a half you've given him is for dictation to a scribe. He still needs breaks as needed to walk around since he can't sit for 2 hours and 15 minutes straight (part I) and 2 hours and 38 minutes straight (part II) without having breaks within each part. If he does, he will have pain. Additionally, from the schedule you've drawn up, he has less total time between tests than the other students have. The "normal schedule" has a total break time of 90 minutes between parts. He has a total break time of 67 minutes between parts.
> Your actions of not giving my son the necessary accommodation of "breaks as needed" constitute unlawful disability discrimination. You told my wife that you are providing a "reasonable" accommodation. Perhaps this seems "reasonable" to you since your original position was not to give my son any accommodation, not even time and a half. All you are providing is the accommodation of time and a half because of the scribe. You are not providing the second accommodation of "breaks as needed" so that he shouldn't get hip pain. This is definitely not "reasonable." You then wrote in your letter to me "I must insist that Moshe take the exam on the schedule I sent you on Friday or withdraw from the competition." **So, his choice is either to have pain or be barred from participating?!!? This is not a fair choice that anyone should have to make.**

The email then gives four possible solutions for the situation.

25. He replied that same day (April 24th), rejecting all our suggestions. Please see his email included here as **Exhibit 19**.

26. Since in Professor Goldberg's email of April 23rd (**Exhibit 17**), he had stated that our requesting the required "breaks as needed," is not substantiated by the doctor's letter (of April 2), we asked the physician to write another letter further elaborating on the necessity of breaks for Moshe.

27. Dr. Harris Burstin's second letter, dated April 24, 2014 appears in **Exhibit 20**. The letter specifies: "I am aware of the College Board's definition of "breaks as needed" and these rules should be applied here. Especially during an 8 hour exam, Moshe should have the option of taking as many breaks as needed without restriction for as long as he feels necessary in order to avoid pain and discomfort." The letter was sent in an email dated Friday April 25th to Dr. Kirchhoff, Ms. Jacobs, the Executive Director of ACs and Dr. Barton, President of ACS. The email is contained in **Exhibit 21**.

28. We also sent them another email on April 25th, exhorting them to allow Moshe "breaks as needed," which are medically necessary for him. It asserts that not to do so would be unlawful disability discrimination. This email appears in **Exhibit 22**.

29. In that second email fo Apri 25th (Exhibit 22), we asked that Since Professor Goldberg has been confrontational in our meeting with him on April 23rd perhaps an alternative site would be better suited to host us?

30. Dr. Mary Kirchhoff replied on the afternoon of Friday April 25th. Please see **Exhibit 23**. I called her later that day to ascertain whether they had a scribe available at 7am, and to a better understand how she will operationalize "breaks as needed" in the event they cannot procure a scribe for an early start time. Would Professor Goldberg stay later than 5:15pm or could the scribe stay later?

31. I spole to Dr. Kirchhoff the afternoon of April 25th and learned there was no one, as of the time of our conversation, that they had who could scribe at 7 am. Professor Goldberg said he was not available but even if he were, he would hardly be appropriate considering the hostility he displayed when we met him on April 23rd. So unless they could find someone quickly, Moshe would have to start at 8:30am. So from where would the extra time come for the breaks? The schedule was still up in the air. Would they be able to find someone for 7am? If not, would there be someone available for the other end of the day if the time runs past 5:15?

    In that conversation, I also voiced my concern about Professor Goldberg in general  , even as a proctor, considering hostility to us. She assured me that Professor Goldberg would act professionally. This did not happen as will be seen below.

32. We wrote two emails to Mary Kirchhoff the following day. The first one, whose contents appear as **Exhibit 24,** inquires when the start time and end time of the exam will be since the exam is scheduled for the following day.

33. The second email, which appears as **Exhibit 25,** states that since they cannot get someone for 7:00am, Moshe will have to start at 8:30am. We propose paying someone extra at the rate of $100 an hour if that person could scribe after 5:15pm, if necessary. I also replied to Ms. Kirchhoff's statement in her email of April 25th that, unlike the ACT and College Board's SAT, the Olympiad is a competition between students. In replying, I point out the SAT and ACT are also competitions—competitions to get into prestigious colleges—and, as such, are quite competitive and just as serious as the Olympiad. I again exhort her to give Moshe "breaks as needed."

34. <u>What happened the day of the Exam/Olympiad:</u>
    (i) When I dropped my son off at the testing room on Sunday April 27th, Professor Goldberg said to me, among other derogatory remarks, ""Get the hell out of here, you idiot." I asked him "Why are you calling me an idiot?" He replied, "Because you are." I was both stunned and shocked. This was in front of my son and the scribe. Even though I had just arrived, he went on to say that unless I left immediately he would call security and have me forcibly removed. All these statements served to unnerve my son and made him very stressed moments before he was to start in the National Exam. (Some of these derogatory remarks are documented in an email I sent Dr. Kirchhoff on May 6, 2014 and appear here in **Exhibit 26**).

    (ii) Steven Z. Goldberg forbade the scribe from speaking to Moshe; she could only show him what she wrote, not read it to him. This unnatural way of communicating was very stress inducing because of its unnaturalness. Was it designed to be stress-inducing so as to undermine Moshe's ability to do well?

    (iii) *Did Moshe get breaks as needed? No, he did not.* The ACS Proctor Goldberg insisted that Moshe begin Part 3 of the exam with all the other students which cut into his extra time for Part 2. So this is what happened regarding breaks for each of the 3 parts of the exam:

    For Part I, he had breaks
    For Part II, he had an 8-minute break and then was told that he had no more break time left and that any other breaks would come out of his testing time so Moshe did not take any more breaks.
    For Part III, he was given no breaks. Everyone had till 5:00. He had till 5:47.

    (iv) Goldberg in no way honored the rule under the College Board Services for Students with Disabilities that Moshe was entitled to take as many breaks and for as long he wanted to avoid pain and discomfort. This was despite the fact that Moshe's doctor Dr. Burstin had underscored the medical necessity of following this rule in his letter of April 24, 2014.

35. <u>What happened the day after the exam?</u>
    On the day after the test, on April 28, Dr. Robert Fisch, a board-certified orthopedic surgeon, stated that "I examined the above (Moshe Schneiderman) today who is experiencing hip pain

due to a long chemistry exam yesterday which aggravated his hip condition." Please see letter from Dr. Fisch in **Exhibit 27**.

36. I wrote to Dr. Kirchhoff on May 6, saying that since there were abuses in the testing process, I would like to have the original scantron, original test booklet and all original scrap paper safeguarded so that we may see them. Please see **Exhibit 26** which contains the contents of the email sent.

37. What were the abuses?
    1. Not giving Moshe breaks as needed even though this was a medical necessity/requirement, and the lack of these breaks resulted in Moshe having to suffer pain.
    2. Instructing the scribe to interact with Moshe in an unnatural manner which served to unsettle him.
    3. I saw the scribe sitting there with a stopwatch. Stopwatches are used to time things to the second. Were they planning to time Moshe to the second? Was Goldberg trying to promote stress and anxiety?
    4. Unsettling Moshe and stressing Moshe by Goldberg's derogatory stress-inducing remarks to me (and as a corollary to Moshe as well since he feels for me and he identifies with me) just moments before the start of the exam. Goldberg's stress-inducement undermined the testing process since none of the other students had to test with berating comments just moments before the start of the exam.

38. *A Question to Consider: Was Goldberg intentionally trying to sabotage Moshe's performance so that he doesn't' succeed to go on to the study camp and compete at the next (international) level? There had been comments in Professor Goldberg's letter (her letter of April 2nd in **Exhibit 5c**) saying that at the international level no disability accommodations would be provided. In that letter Professor Goldberg had written:*

    With respect to time limits I have been informed that these must be adhered to, since the purpose of the national exam is to determine who will be invited to the study camp and therefore be a potential team member at the International Olympiad, at which time limits are adhered to strictly.

*Was the Olympiad administration apprehensive that should Moshe score well and continue on to the international level he would not get the accommodations he needed, and therefore, the team would be at a disadvantage with him on it? Were they trying to eliminate him at this level so that he didn't have a chance to go on to the international level?*

**CAUSE OF ACTION: Disability Discrimination**

39. We repeat and reallege every allegation of paragraphs1 through 38 as set forth herein.

40. The Chemistry Olympiad and the American Chemical Society knowingly engaged in disability discrimination by denying Moshe the accommodation of "breaks as needed" as indicated in the medical documentation provided them prior to the National exam, and which was an accommodation Moshe had for all College Board tests. This accommodation was a medical necessity for Moshe not to have pain and, thus be able to compete fairly in this important, lengthy/all day exam.

WHEREFORE, we respectfully request that this Court enter judgment:

(a) Awarding plaintiffs the compensation for pain and suffering;

(b) Awarding plaintiffs compensation for physical pain and physical damages;

(c) Awarding plaintiffs compensation for emotional damages and emotional suffering;

(d) Awarding plaintiffs for the lost opportunity to participate fairly and the increase in credentials that would have resulted therein: This could have resulted in admission to Ivy League colleges and additional opportunities that would have followed as a result.

(e) Awarding plaintiffs for the impact on loss of future earnings that could have resulted from the opportunity to participate fairly in the competition.

(f) Awarding plaintiffs punitive damages so that this does not happen to anyone else again in the future.

(g) Awarding plaintiffs interest and costs of this action together with reasonable attorney's fees.

(h) Granting such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury in this action.

**CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: Woodmere, N.Y.
April 25, 2017

Signature of Plaintiff 1   *Barbara Numa* (signature)

Signature of Plaintiff 2   *Mitch Schulman* (signature)

791 Hampton Road
Woodmere N.Y. 11598