UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARNOLD SCHNEIDERMAN,

                                    Plaintiff,

        –against–                                    **MEMORANDUM AND ORDER**
                                                     17-CV-2530 (RRM) (TAM)

THE AMERICAN CHEMICAL SOCIETY,

                                    Defendant.
-----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        In September 2021, after plaintiff Arnold Schneiderman abandoned all federal claims in

this disability discrimination lawsuit, the Court dismissed this diversity action for lack of subject-

matter jurisdiction, holding that defendant The American Chemical Society ("ACS"), a federally

chartered corporation, was not a citizen of any state.  In the seven months after judgment was

entered against him, plaintiff, proceeding pro se, filed three motions to reopen this case, all of

which were denied.  Plaintiff now moves for reconsideration of the Court's Memorandum and

Order dated March 30, 2023, which denied the third of the motions to reopen, and moves to

restore to the docket a letter which was stricken from the record by Magistrate Judge Sanket

Bulsara's order dated February 3, 2021.  For the reasons stated below, the motions are denied.

## BACKGROUND

        The facts and procedural history of this case are set forth in some detail in the three

orders that the Court has already written in this case.  (Docs. No. 70, 83, 89.)  While familiarity

with these three orders is assumed, the Court will recap some facts for the convenience of the

reader and add some details relating to the motion at bar.

1

ACS is a federally chartered corporation which runs an annual chemistry competition for high school students: the United States National Chemistry Olympiad ("USNCO").  Plaintiff, a New York high school student with physical disabilities, qualified to participate in the 2014 USNCO.  Prior to the competition, plaintiff's parents engaged in an extended negotiation with ACS, which ultimately agreed to afford plaintiff certain accommodations for his disability.  On the day of the competition, however, plaintiff was allegedly denied some of the accommodations, adversely affecting his score.

On April 27, 2017, plaintiff and his mother commenced this action by filing a pro se complaint.  (Doc. No. 1.)  Although that pleading specifically alleged diversity jurisdiction, it also alleged violations of two federal statutes: the Americans with Disabilities Act of 1990 (the "ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), and section 504 of the Rehabilitation Act of 1973 ("Section 504").  In addition, the complaint alleged violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

On October 30, 2017, defendant moved to dismiss the complaint.  Point II(B) of Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Defendant's Memo") argued that the Section 504 claim should be dismissed because USNCO did not receive federal assistance.  (*Id.* (Doc. No. 16-1) at 8–9.)  However, the Table of Contents to Defendant's Memo misstated the heading of this point, stating that it argued: "Plaintiffs' Section 504 Claim Should Be Dismissed Because *ACS* Does Not Receive Federal Assistance."  (*Id.* at i (emphasis added).)  In fact, the point heading which appeared at the beginning of Point II(B) stated: "Plaintiffs' Section 504 Claim Should Be Dismissed Because *USNCO* Does Not Receive Federal Assistance."  (*Id.* at 8.)  This point heading was consistent with the argument that followed.

2

Point II(B) asserted that in order "to establish a prima facie case under Section 504," plaintiffs had to demonstrate, among other things, "that USNCO is … a recipient of Federal financial assistance." (*Id.* at 8.)  The point concluded that because plaintiffs could not "allege that USNCO receives Federal financial assistance," they had not made out a prima facie case under Section 504. (*Id.* at 8–9.)

A little more than two weeks after this motion was filed, plaintiff – who was still proceeding pro se – filed an Amended Complaint. (Doc. No. 17.)  The amended pleading did not list plaintiff's mother as a plaintiff, thereby terminating her as a party to this action.  Like the original pleading, the Amended Complaint alleged only diversity jurisdiction, not federal question jurisdiction.  Unlike the original complaint, it did not allege claims under Section 504 or the NYCHRL, but only alleged violations of the ADA and the NYSHRL.

On December 1, 2017, defendant filed a pre-motion conference request, seeking permission to move to dismiss the Amended Complaint. (Doc. No. 20.)  A week later, an attorney, Joshua Fuld Nessen, filed a notice of appearance on behalf of plaintiff. (Doc. No. 22.)  On January 30, 2018, after the Court issued a briefing schedule relating to the motion to dismiss, Mr. Nessen filed a proposed Second Amended Complaint, which alleged only diversity jurisdiction but pleaded causes of action under both the ADA and NYSHRL.  Defendant agreed to permit plaintiff to file that pleading, then moved to dismiss the Second Amended Complaint.  In his opposition to that motion, plaintiff abandoned the ADA claim – the only remaining federal cause of action. (Plaintiff's Memorandum in Opposition to Motion to Dismiss (Doc. No. 41-27) at 5.)

Before defendant filed its reply to the motion to dismiss the Second Amended Complaint, plaintiff moved for leave to file yet another amended complaint. (Doc. No. 40.)  On May 18,

2020, the Court granted that motion and denied defendant's motion to dismiss the Second

Amended Complaint as moot.  (Doc. No. 47.)  On June 17, 2020, plaintiff filed his Third

Amended Complaint, (Doc. No. 48), which alleged only diversity jurisdiction and only one cause

of action – a NYSHRL claim.

Shortly after filing the Third Amended Complaint, Mr. Nessen wrote a letter to

Magistrate Judge Gold asking to discuss the possibility of reinstating the Section 504 claim.

(Letter (Doc. No. 49) at 1.)  In response, Judge Gold held a telephone conference on June 30,

2020.  The record does not contain a transcript of that conference but, according to a Minute

Entry prepared by Judge Gold, the parties were directed to "confer with respect to whether

defendant will stipulate that its receipt and expenditure of federal funds satisfies the requirement

of [Section 504,] 29 USC 794(b)(3)(A)(i)."  (Doc. No. 51.)  If defendant declined to stipulate,

plaintiff could "propound interrogatories and document demands limited to this issue."  (*Id.*)  If

discovery proved necessary, the parties were to "submit a letter by July 8, 2020 indicating how

they [would] proceed and the schedule they propose[d] for doing so."  (*Id.*)  Aware that

defendant intended to request a pre-motion conference in anticipation of moving to dismiss the

Third Amended Complaint, Judge Gold "encouraged" the parties to alert the Court to "the

possibility that plaintiff may seek leave to file a Fourth Amended Complaint so that a schedule

that takes that possibility into account may be set."  (Minute Entry dated June 30, 2020 (Doc.

No. 51).)

On July 1, 2020, the day after the conference, defendant filed its pre-motion conference

request.  (Doc. No. 50.)  A week later, Mr. Nessen sent Judge Gold a letter indicating that

defendant had declined to enter into a stipulation, but was willing to respond to interrogatories

and document demands relating to defendant's receipt of federal funds.  (7/8/2020 Letter (Doc.

No. 52) at 1.)  Mr. Nessen proposed a discovery schedule which required defendant to respond to plaintiff's discovery requests by August 21, 2020, (*id.*), and Judge Gold approved that schedule in an order dated July 9, 2020.

On July 10, 2020, Mr. Nessen responded to defendant's pre-motion conference request. He noted that Judge Gold had authorized discovery into the Section 504 claim and that plaintiff might seek permission to reinstate that claim if discovery established that it was viable.  (Letter (Doc. No. 53) at 3, Point 5.)  However, Mr. Nessen did not request a delay in the briefing schedule to permit plaintiff time to complete that discovery.  In an order dated July 13, 2020, the Court denied the pre-motion conference but set a briefing schedule that required the defendant's fully briefed motion to dismiss be filed by September 25, 2020 – more than a month after the deadline for responding to plaintiff's discovery requests.

Plaintiff subsequently requested two short extensions of the briefing schedule but never requested permission to file a Fourth Amended Complaint.  On January 28, 2021, more than a month after the fully briefed motion to dismiss was filed, Mr. Nessen wrote a letter – hereafter, "the 1/28/2021 Letter" – in which he indicated that he had received defendant's responses to his interrogatories and document requests relating to the Section 504 issue on August 21, 2020. Although Mr. Nessen claimed that the discovery production had "deficits," he stated:

> [E]ven based on what has been received, Plaintiff will certainly submit a pre-motion conference letter in anticipation of a motion to restore the Rehabilitation Act claim through a Fourth Amended Complaint.  It is already clear that ACS did receive Federal funding for operations "as whole" through grants in effect during 2014.  Accordingly, Plaintiff will be submitting the requisite pre-motion conference letter to the Court once all discovery issues have been resolved.

(Doc. No. 91, Ex. 9, at 3.)  Defendant's response to that letter sought to preclude plaintiff from seeking to amend his pleading, stating: "Defendant respectfully submits that plaintiff should not

be permitted to file any other requests for leave to amend nor should he be permitted to file a Fourth Amended Complaint."

In an order dated February 3, 2021, Magistrate Judge Bulsara, to whom the case had been reassigned in early 2021, ordered that the 1/28/2021 Letter, along with defendant's response thereto (Doc. No. 68) and plaintiff's reply (Doc. No. 69), be stricken.  Judge Bulsara's order noted that neither party was "moving or seeking relief from the Court" and characterized the letters as "nothing more than warring versions of each sides position on the merits … and futile attempt[s] to paint the opposing party in a bad light before the Court."  (2/3/2021 Order.) Plaintiff did not appeal that order and there is no indication in the docket sheet that Mr. Nessen ever sought to cure any deficiencies in defendant's discovery production.

<u>The Order Dismissing this Action and Prior Letter-Motions for Reconsideration</u>

On September 28, 2021, the Court issued a memorandum and order (the "First M&O"), dismissing this action for lack of subject-matter jurisdiction.  The Court noted that subject-matter jurisdiction in this case was predicated solely on diversity jurisdiction since the Third Amended Complaint did not allege any federal causes of action.  And since the only defendant, ACS, was a "federally chartered corporation" and "not a citizen of any state," the Court concluded that it lacked diversity jurisdiction.  (First M&O (Doc. No. 70) at 8.)

After the Court entered judgment dismissing this case, plaintiff, proceeding pro se, filed two letter-motions for reconsideration.  In the first of the letter-motions, dated October 27, 2021, (Doc. No. 72), plaintiff argued that the Court overlooked the fact that Judge Gold had authorized discovery to determine the viability of moving to reinstate the Section 504 claim.  In support of this motion, plaintiff filed a letter that had been sent to the Court's chambers by Mr. Nessen on October 12, 2021, in which the attorney made clear that plaintiff was not seeking reconsideration

of the Court's decision dismissing the Third Amended Complaint for lack of diversity

jurisdiction, but was seeking to reopen the case to permit the completion of discovery into the

Section 504 issue.  In the second of the letter-motions, dated March 23, 2022, (Doc. No. 82),

plaintiff provided evidence that ACS had been receiving federal assistance.

      In a memorandum and order dated March 29, 2022 (the "Second M&O"), the Court

denied both letter-motions for reconsideration.  The Court noted that the fact that plaintiff was

engaged in discovery to determine the feasibility of reinstating the previously dismissed Section

504 claim had not been mentioned in plaintiff's Opposition Memo and was irrelevant to the

issues presented in the motion to dismiss.  The Court stated:

> Even if … discovery had uncovered evidence to support the
> Rehabilitation Act claim, it is undisputed that the Third Amended
> Complaint contained only one state-law claim and that plaintiff
> never requested a pre-motion conference or otherwise formally
> applied for permission to file a fourth amended complaint.  Even if
> plaintiff had mentioned the ongoing discovery in his Opposition
> Memo, this fact would not have altered the … conclusion that the
> Court lacked subject-matter jurisdiction.

(Second M&O (Doc. No. 83) at 9.)

      In late April 2022 less than one month after the Court issued the Second M&O – plaintiff

filed third pro se letter-motion, entitled a "Letter-Motion for Leave to Amend and Restore

Section 504 & Letter-Motion to Reopen."  (Doc. No. 84.)  This submission (hereafter, the "Third

Letter-Motion") raised several arguments, one of which merits mention here.  Plaintiff argued

that defendant made false statements regarding ACS's receipt of federal funds both in

Defendant's Memo and during the June 30, 2020, telephone conference before Magistrate Judge

Gold.  The allegedly false statement in Defendant's Memo was the heading of Point II(B) in the

Table of Contents to Defendant's Memo, which stated: "Plaintiffs' Section 504 Claim Should Be

Dismissed Because ACS Does Not Receive Federal Assistance."

In a memorandum and order dated March 30, 2023 (the "Third M&O"), the Court denied the Third Letter-Motion.  The Court rejected the argument set forth above, holding that there was "no evidence the ACS engaged in fraud, misrepresentation, or misconduct."  (*Id.* at 9.)  The Court noted that Point II(B) "argued that plaintiff did not, and could not, allege that USNCO, as opposed to the ACS, received federal assistance and therefore could not state a Rehabilitation Act claim against USNCO," and that plaintiff "did not contest this point but tacitly admitted that defendant was correct by withdrawing the Rehabilitation Act claim."  (*Id.* at 9–10.)  The Court noted that "[a]lthough plaintiff may have subsequently discovered evidence that the ACS receives some federal funding, this evidence does not establish the falsity of defendant's claim that USNCO did not receive such funding."  (*Id.* at 10.)

The Instant Motion

Plaintiff now moves for reconsideration of the Third M&O "pursuant to Rule 60(b) fraud or mistake or both," principally asserting that defendant misstated the law and that the Court relied on the fallacious legal reasoning in the Third M&O.  In making this argument, plaintiff identifies as "Erroneous Statement #1" the argument raised in Point II(B) of Defendant's Memo: that plaintiff had to establish that USNCO received federal funding in order to make out a Section 504 Claim.  Plaintiff asserts that the Court relied on this "completely erroneous" legal argument in the Third M&O, and was misled into finding that the Court lacked subject-matter jurisdiction.

Plaintiff also identifies two false statements that allegedly prompted him to abandon his Section 504 claim.  The first statement was the heading to Point II(B) that appeared in the Table of Contents of Defendant's Memo, which read: "Plaintiff's Section 504 Claim Should Be Dismissed Because ACS Does Not Receive Federal Assistance."  Plaintiff claims that defendant

repeated this argument in the second statement, which was allegedly made at a June 30, 2020, telephone conference.  According to Plaintiff, "ACS Maintained to Magistrate Steven Gold … that ACS is not subject to Section 504 of the Rehabilitation Act and would not stipulate that it was."  (Instant Motion at 2.)  However, the only evidence that plaintiff has provided of what transpired during the telephone conference was Judge Gold's Minute Entry of June 30, 2020.  That document stated that the parties would "confer with respect to whether defendant will stipulate that its receipt and expenditure of federal funds satisfies the requirements of [Section 504,] 29 USC 794(b)(3)(A)(i)" and that plaintiff could "propound interrogatories and document demands limited to this issue" if defendant declined to stipulate.  (Instant Motion, Ex. 3.)

In addition, plaintiff argues that the 1/28/2021 Letter was a request for leave to file a fourth amended complaint, and should be restored to the docket.  Plaintiff quotes the portion of that letter in which Mr. Nessen stated that plaintiff would "certainly submit a pre-motion conference letter in anticipation of a motion to restore the Rehabilitation Act claim through a Fourth Amended Complaint … once all discovery issues have been resolved." (*Id.*, Ex. 9, at 3.)  Plaintiff claims that defendant's counsel construed this letter as a pre-motion conference when he stated, in his opposition to the letter, "Plaintiff should not be permitted to file any other requests for leave to amend nor should he be permitted to file a Fourth Amended Complaint."  (*Id.* at 3.)  Plaintiff asks that the 1/28/2021 Letter be restored to the docket, (*id.*), and, in a separate letter dated July 31, 2023, (Doc. No. 93), requests that the Court send him a copy of both the 1/28/2021 Letter and defendant's letter in opposition to it – both of which were stricken from the record by Magistrate Judge Bulsara's order of February 3, 2021.

9

## STANDARD OF REVIEW

The Instant Motion, like the prior motions for reconsideration, was filed pro se.  Courts are required to construe pro se papers "liberally and interpret them to raise the strongest arguments that they suggest."  *Mahany v. City of Buffalo Police Dep't*, 777 F. App'x 547, 549 (2d Cir. 2019) (summary order).

Unlike the prior motions for reconsideration, the Instant Motion specifies that it is brought "pursuant to Rule 60(b) mistake or fraud or both."  (Instant Motion at 1.)  Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  The Second Circuit has "warned … that a Rule 60 motion 'may not be used as a substitute for appeal,'" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 107 (2d Cir. 1986)), and has held that such a motion is "properly denied" when it seeks "only to relitigate issues already decided."  *Moreno-Cuevas v. Huntington Learning Ctr.*, 501 F. App'x 64, 66 (2d Cir. 2012) (summary order).

Rule 60(b) permits a party to seek relief from a final judgment, order, or proceeding on several grounds, including "(1) mistake, inadvertence, surprise, or excusable neglect" and "(3) fraud …, misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b).  In the Rule 60(b)(1) context, the Second Circuit has "noted that Rule 60 does 'not allow district courts to indulge a party's discontent over … a 'deliberate, strategic choice ….'"  *United Airlines*, 588 F.3d at 176 (quoting *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir.1994)).  "A chance to relitigate an issue under a different strategy or with different evidence is … exactly the sort of 'second bite at the apple' that makes reconsideration inappropriate."  *Nastri v. Dykes*, No. 23-CV-0056 (JBA), 2023 WL 5276396, at *4 (D. Conn. Aug. 16, 2023) (quoting *Analytical Survs.,*

10

*Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  Similarly, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).  "This is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." *Id.* (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34 (1962)).

With respect to Rule 60(b)(3), the Second Circuit has repeatedly "held that 'a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations.'" *Bell v. Carlson*, No. 19-3461, 2021 WL 4022726, at *1 (2d Cir. Sept. 3, 2021) (summary order) (quoting *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989)); *see, e.g.*, *Crispin v. Rodriguez*, No. 21-883, 2023 WL 1113536, at *2 (2d Cir. Jan. 31, 2023) (summary order); *Ren Yuan Deng v. New York State Off. of Mental Health*, 783 F. App'x 72, 73 (2d Cir. 2019) (summary order).  The term "clear and convincing evidence" has been defined as "evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened and … is neither equivocal nor open to opposing presumptions." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir. 2021) (citations omitted).  In addition, "a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004).

## DISCUSSION

In the Instant Motion, plaintiff primarily relies on Rule 60(b)(3), asserting that three statements made by defendant in connection with its motion to dismiss the Section 504 claim were either "erroneous" or "false."  First, plaintiff asserts that Point II(B) of Defendant's Memo

was premised on "Erroneous Statement #1" – that plaintiff needed to prove that USNCO received federal funding in order to establish that defendant was subject to the Rehabilitation Act.  Plaintiff asserts that the Court relied on this erroneous statement in its Third M&O, in which the Court stated that plaintiff "did not contest this point" but "tacitly admitted" it by withdrawing the Section 504 Claim.  (Instant Motion at 2–3.)

This argument is essentially identical to one of the arguments raised in plaintiff's third letter-motion for reconsideration (Doc. No. 84), which the Court construed as implying that "ACS engaged in fraud, misrepresentation, or misconduct by claiming, in its initial motion to dismiss, that USNCO does not receive federal assistance."  (Third M&O at 6.)  The Court has already rejected this argument, noting that plaintiff adduced "no evidence the ACS engaged in fraud, misrepresentation, or misconduct" and had not contested Point II(B).  Although plaintiff obviously disagrees with the Court's ruling, he cannot use a Rule 60 motion to relitigate the point or as a substitute for an appeal.  *See Moreno-Cuevas*, 501 F. App'x at 66; *United Airlines*, 588 F.3d at 176.

Plaintiff also alleges that defendant made two false statements pertaining to ACS's receipt of federal funds and liability under the Rehabilitation Act.  The first of these statements was in the heading for Point II(B) that appeared in the Table of Contents of Defendant's Memo, which stated: "Plaintiff's Section 504 Claim Should Be Dismissed Because ACS Does Not Receive Federal Assistance."  (Defendant's Memo at i.)  Defendant alleges that this statement prompted him to remove his Section 504 Claim from the Amended Complaint, which was filed in mid-November 2017.  (Instant Motion at 2.)  The second false statement allegedly occurred at a June 30, 2020, status conference, at which defendant allegedly told Magistrate Judge Gold that ACS was not subject to Section 504 and that defendant would not stipulate that it was.

There is a substantial question as to whether the first of these statements is a material misrepresentation or just a typographical error.  Although the heading in the Table of Contents of Defendant's Memo alleged that ACS did not receive federal assistance, the heading that appears at the start of Point II(B) states that "Plaintiffs' Section 504 Claim Should Be Dismissed Because *USNCO* Does Not Receive Federal Assistance."  (Defendant's Memo at 8 (emphasis added).) Consistent with the heading, Point II(B) argues only that "Plaintiffs have not, and cannot, allege that *USNCO* receives Federal financial assistance."  (*Id.* (emphasis added).)   The point makes no mention whatsoever of ACS.

Similarly, there is a substantial question as to what occurred during the June 30, 2020, conference before Judge Gold.  Plaintiff has not adduced clear and convincing evidence that ACS ever expressly denied that it received federal assistance.  Rather, the only evidence provided by plaintiff is Judge Gold's Minute Entry relating to the conference which states that "[t]he parties will confer with respect to whether defendant will stipulate that its receipt and expenditure of federal funds satisfies the requirement of [Section 504]" and that plaintiff could conduct limited discovery in the event that defendant refused to stipulate.  (Instant Motion at 2.) While it is clear that the parties did not enter into a stipulation and that discovery ensued, these facts establish only that defendant refused to concede this element of a Section 504 claim.  These facts do not establish that defendant made any misrepresentations regarding whether ACS or USNCO received federal assistance.

Even assuming that plaintiff could establish by clear and convincing evidence that defendant made the two allegedly false statements and that they were material misrepresentations, plaintiff could not establish that they prevented him "from fully and fairly presenting his case."  *See State St. Bank & Tr. Co.*, 374 F.3d at 176.  Plaintiff was not required to

13

assume the accuracy of factual assertions contained in Defendant's Memo.  Indeed, at the motion to dismiss stage of the litigation, plaintiff could merely assert that ACS received federal funding, then pursue discovery that would establish the truth of his assertion.  While plaintiff now believes that it was a mistake not to contest Point II(B) and to omit the Section 504 claim from his Amended Complaint, this was a "deliberate, strategic choice" on his part.  *See United Airlines*, 588 F.3d at 176.  Plaintiff's dissatisfaction with his strategic choice does not make it the sort of mistake, inadvertence, surprise or excusable neglect that would justify Rule 60(b)(1) relief.  *See Nemaizer*, 793 F.2d at 62.

Plaintiff's decision to drop the Section 504 claim in late 2017 preceded the June 30, 2020, conference by roughly two and one-half years.  Accordingly, whatever misrepresentations defendant's counsel may have made at the conference could not have been the cause of plaintiff's decision to abandon the Section 504 claim.  Indeed, the fact that plaintiff engaged in discovery into the Section 504 claim after defendant refused to enter into a stipulation regarding its receipt of federal assistance suggests that whatever misrepresentations defendant may have made at the conference did not dissuade plaintiff from pursuing the Section 504 claim.

Plaintiff's Motion to Restore the 1/28/2021 Letter to the Docket[1]

In addition to moving for reconsideration of the Third M&O, plaintiff moves to restore the 1/28/2021 Letter to the docket, asserting that this letter should be construed as a request for leave to file a fourth amended complaint.  This argument is both procedurally and substantively flawed.

---

[1] The Court did not retain copies of the 1/28/2021 Letter or defendant's response thereto.  Accordingly, the Court cannot send plaintiff copies of these documents as requested in his 7/31/2023 letter (Doc. No. 93).  However, the Court notes that a copy of the 1/28/2021 Letter is attached as Exhibit 9 to the Instant Motion and that the Instant Motion quotes from defendant's response.  This suggests that plaintiff already has copies of these documents.  The Court will assume that Exhibit 9 is a true and accurate copy of the 1/28/2021 Letter and that plaintiff is correctly quoting from the response.

14

First, this argument is untimely.  Rule 72(a) of the Federal Rules of Civil Procedure provides that a party who disagrees with a magistrate judge's non-dispositive order "may serve and file objections to the order within 14 days after being served with a copy."  Plaintiff did not serve and file the Instant Motion until May 25, 2023 – more than 15 months after Judge Bulsara issued his February 3, 2021, order striking the 1/28/2021 Letter from the docket.  Plaintiff has not provided any explanation for this delay in challenging Judge Bulsara's order.

Second, plaintiff's assertion that the 1/28/2021 Letter could be characterized as a request for a pre-motion conference request is inconsistent with statements contained in the letter itself. That letter made it clear that plaintiff intended to file a pre-motion conference sometime in the indefinite future, stating, "Plaintiff will certainly submit a pre-motion conference letter in anticipation of a motion to restore the Rehabilitation Act claim through a Fourth Amendment Complaint … once all discovery issues have been resolved."  (1/28/2021 Letter at 3.)  This language is inconsistent with the argument that the 1/28/2021 Letter was itself a pre-motion conference request.

Although defendant's response to the 1/28/2021 Letter urged the Court not to permit plaintiff "to file any other requests for leave to amend," the Court does not read this language as suggesting that defendant interpreted the 1/28/2021 Letter as a pre-motion conference request. Rather, defendant appears to be voicing a general objection to any further efforts to amend plaintiff's pleading.  Even assuming that defendant interpreted the 1/28/2021 Letter as a pre-motion conference request, that interpretation would be contrary to the express language of the 1/28/2021 Letter and is not binding on the Court.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for reconsideration of the Third M&O

and to restore the 1/28/2021 Letter to the docket is denied.

SO ORDERED.

Dated: Brooklyn, New York
      December 28, 2023

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge